784 So.2d 1173 (2001)
EASY BAIL BONDS, Appellant,
v.
POLK COUNTY, Appellee.
No. 2D00-1044.
District Court of Appeal of Florida, Second District.
April 4, 2001.
James R. Franklin of the Franklin Law Firm, P.A., Lakeland, for Appellant.
Sameer V. Sheth and James W. Earl, Assistant County Attorneys, Bartow, for Appellee.
David S. Bergdoll, Bartow, Amicus Curiae, for the Polk County Sheriffs Office.
*1174 Michael A. Zas, Senior Assistant County Attorney, Clearwater, Amicus Curiae, for Pinellas County.
PARKER, Acting Chief Judge.
Easy Bail Bonds (Easy) appeals the trial court's order denying its motion to set aside an order requiring Easy to pay a predetermined flat fee to Polk County (the County) as a condition of setting aside bond forfeitures.[1] The sole question on appeal is whether Polk County can charge bail bondsmen a predetermined flat fee as a condition of setting aside a bond forfeiture to cover the "payment of costs and the expenses incurred in returning the defendant to the county of jurisdiction." § 903.26(8), Fla. Stat. (1999). The trial court held that the County could assess a predetermined flat fee in every case. We reverse because the statutes at issue require an individual determination of costs in each case.
Easy is a licensed bail bond agency that issues surety appearance bonds for individuals with criminal charges pending against them in the Tenth Circuit Court and the Polk County Court. In 1999 and 2000 Easy posted bail bonds for a number of defendants who subsequently failed to appear for court hearings. The respective judges assigned to the defendants' cases issued either a capias or a bench warrant for the respective defendants' arrests and ordered the clerk of court to forfeit the defendants' bonds.
Each defendant was rearrested within sixty days of the forfeiture of his or her bond. After the arrests and within sixty days of the bond forfeitures, Easy filed a notification of each defendant's arrest and a request for the clerk to set aside the bond forfeiture pursuant to section 903.26(8), Florida Statutes (1999).[2] The trial court ultimately set aside the forfeitures but required Easy to pay "costs" of either $50 or $100 per case depending on the circumstances surrounding the defendants' arrests. These "costs" were imposed based on a fee schedule developed by the Tenth Circuit Clerk which provides: when the bail bondsman captures the defendant, the bail bondsman is charged $50 to set aside the forfeiture; when the Polk County Sheriff's Office captures the defendant in Polk County, the bail bondsman is charged $100 to set aside the forfeiture; when law enforcement captures the defendant outside of Polk County, the bail bondsman is charged $100 to set aside the forfeiture plus the transportation costs incurred in returning the defendant to Polk County.[3]
*1175 Easy objected to the imposition of the predetermined flat fee as "costs" and requested that the discharge of the bond forfeitures at issue be scheduled for an evidentiary hearing. At that hearing, the clerk of court testified concerning how the clerk's office had developed the flat fee schedule. The clerk also testified to the average amount of time spent by the clerk's office to process a bond forfeiture and remission. A representative of the Polk County Sheriff's Office testified to the average amount of time spent on rearresting and rebooking a defendant and the average costs involved. The County did not present any testimony concerning the actual amount of time spent on any individual case, arguing that it would be impossible to keep such records.
Following the hearing, the trial court upheld the County's practice of assessing these predetermined flat fees against bail bondsmen as "costs." In its ruling, the trial court admitted that the record did not contain evidence of actual costs, but found that the determination of actual costs in each case "would be impractical and frankly impossible." The trial court concluded that the evidence of average costs presented by the County was legally sufficient and established that the predetermined flat fees were "fair and reasonable, and not ... arbitrary." It is this ruling that Easy challenges in this appeal.
Easy and the County agree that under section 903.26(8) a bail bondsman is responsible for the payment of the costs and expenses incurred in returning the defendant to the jurisdiction of the court after a bond has been forfeited; however, they have two disputes over the application of this statute. The first dispute concerns the scope of the costs and expenses contemplated by the statute. The second concerns the evidentiary support required in order to impose costs in a specific case. We address each of these disputes in turn.

SCOPE OF COSTS.
Chapter 903, Florida Statutes, governs all aspects of bail in criminal cases, including the procedures for forfeiting bonds and discharging bond forfeitures. Section 903.26(5)(c), Florida Statutes (1999), requires the court to condition the discharge or remission of a bond forfeiture on "the payment of costs and the expenses incurred by an official in returning the defendant to the jurisdiction of the court." Similarly, section 903.26(8) prohibits the clerk from discharging a forfeiture prior to judgment unless the bail bondsman has paid "the costs and expenses incurred in returning the defendant to the county of jurisdiction." Further, section 903.28(2), Florida Statutes (1999), states that the trial court may remit a forfeiture "when the costs of returning the defendant to the jurisdiction of the court have been deducted from the remission." See also § 903.28(3), (4), (5), (6), Fla. Stat. (1999). None of these sections, or any other section of chapter 903, specifies what costs are to be included as "incurred in returning the defendant to the jurisdiction of the court."
Easy argues that the only allowable costs are strictly transportation costs, i.e., mileage. The County argues that the allowable costs include amounts to compensate the clerk's office for preparing and issuing the capias, amounts to compensate the clerk's office for mailing various notices, amounts to compensate the clerk's office for "keeping track of" the forfeiture, amounts to compensate the sheriff's office for receiving and executing the capias, and amounts to compensate the sheriff's office for transporting and rebooking the defendant. Amicus Pinellas County also argues that allowable costs should include amounts to compensate the county attorney's office for time spent reviewing motions to set aside bond forfeitures and preparing for and attending hearings. *1176 None of these arguments is entirely correct.
The County's argument that "costs" should include more than simply the mileage cost for transporting the defendant is based on the fact that section 903.21(3), Florida Statutes (1999), dealing with the surrender of a defendant before a bond is breached, states that the bail bondsman must pay the "transportation cost of returning the defendant to the jurisdiction of the court." The County argues that the use of the specific phrase "transportation cost" in section 903.21(3) and the absence of the word "transportation" in sections 903.26 and 903.28 means that the legislature did not intend to limit the costs allowed by sections 903.26 and 903.28 to simply mileage. While this point may have merit, we do not believe that the absence of the word "transportation" expands the scope of allowable costs to include an assessment of clerk's costs and county attorney's costs. Rather, we believe that the absence of the word "transportation" simply allows the sheriff's office to collect all costs incurred in returning the defendant from the county of arrest to the county holding the arrest warrant.
The legislative history of the 1999 amendments to chapter 903, which included the addition of section 903.26(8), supports this interpretation. The House Staff Analysis of the proposed amendment notes that the amendment would require bail bondsmen to "pay the cost of transferring the defendant to the jurisdiction of the court whenever the state refuses to extradite the defendant." Staff of House Comm. on Corrections, Final Analysis on HB 717, at 8 (Fla. June 15, 1999). Similarly, the Senate Staff Analysis notes that counties may experience a positive fiscal impact because bail bondsmen will be reimbursing counties for the costs and expenses of returning the defendant from the county where he or she was arrested to the county having jurisdiction. Staff of Senate Comm. on Criminal Justice, Senate Staff Analysis & Economic Impact Statement (Fla. Apr. 5, 1999). This language leads us to conclude that the costs contemplated by the legislature are those incurred in returning the defendant to the county holding the arrest warrant after the defendant has been arrested on the capias or bench warrant. Thus, none of the clerk's costs would be included, and the sheriffs costs in receiving and executing the capias or bench warrant would not be included.
In addition, simple fairness supports our interpretation. The imposition of costs for the clerk's time and county attorney's time would subject bail bondsmen to costs that no other litigant pays. This court has held that criminal defendants cannot be held responsible for "expenditures that must be made in order to maintain and operate the judicial system irrespective of specific violations of the law." Mickler v. State, 682 So.2d 607, 609 (Fla. 2d DCA 1996). See also Williams v. State, 596 So.2d 758, 759 (Fla. 2d DCA 1992) (holding that it is inappropriate to assess as costs judicial salaries, clerical services, and juror reimbursement). The court system also does not impose these costs on civil litigants. Here, however, the County contends that bail bondsmen should be held responsible for just such expenditures. While we recognize that the clerk would not have to issue a specific capias absent a specific violation of the law, the clerk's office must exist in order to maintain and operate the judicial system irrespective of a specific violation. Similarly, like the state attorneys' offices, the county attorneys' offices must exist and operate irrespective of specific violations of the law. Requiring bail bondsmen to absorb the costs of these offices when they are imposed on no other participant in the judicial system and when the offices must exist regardless of the forfeiture of a bond is simply unfair.
*1177 It appears from the language of the statutes and their legislative history that the most proper reading of the phrase "costs and expenses incurred in returning the defendant to the jurisdiction of the court" would require bail bondsmen to pay the costs incurred by the sheriff's office in actually transporting the defendant from the county of arrest to the county holding the arrest warrant. This would include the prorated salary of the officers involved in transporting the defendant as well as the actual expenses of transportation.[4] It does not appear that any other costs or expenses were contemplated or intended by the legislature. Therefore, to the extent that the trial court's order allows the County to assess a predetermined flat fee for "costs" that includes amounts to compensate the clerk's office for its time and expenses and the sheriff's office for receiving and processing the capias, it must be reversed.

DETERMINATION OF COSTS
The parties' second dispute concerns whether the County must establish the actual costs incurred in returning a specific defendant to the jurisdiction of the court or whether the County can rely on an average figure calculated for all defendants. As to this dispute, both the statute itself and case law applying it clearly require the County to prove the actual costs incurred for each specific defendant.
Section 903.26(8) states:
If the defendant is arrested and returned to the county of jurisdiction of the court prior to judgment, the clerk, upon affirmation by the sheriff or the chief correctional officer, shall, without further order of the court, discharge the forfeiture of the bond. However, if the surety agent fails to pay the costs and expenses incurred in returning the defendant to the county of jurisdiction, the clerk shall not discharge the forfeiture of the bond. If the surety agent and the county attorney fail to agree on the amount of said costs, then the court, after notice to the county attorney, shall determine the amount of the costs.
(Emphasis added.) This statutory language clearly contemplates an individualized determination of the costs applicable to each defendant. If the County were allowed to simply apply an average fee to every defendant, there would be no need for the statutory provision requiring the bail bondsman and the county attorney to agree on the amount of the costs, and there would be no need for a court hearing if the bail bondsman and the county attorney did not agree. Rather, if the legislature intended for a flat fee based on average costs to suffice, it would simply allow for that fee as a matter of course with no opportunity for negotiation and a court hearing. Therefore, the statutory language indicates that an individualized determination of costs is required.
Case law also supports this interpretation. In Jack's Bail Bonds, Inc. v. Putnam County, 574 So.2d 302, 304 (Fla. 5th DCA 1991), the court reversed the trial court's order requiring Jack's to pay twenty-five percent of the bond amount as costs. The basis for the reversal was that *1178 the trial court had taken no evidence concerning the actual costs incurred in that case. Id. Similarly, in Accredited Surety & Casualty Co. v. State, 418 So.2d 378 (Fla. 5th DCA 1982), the court reversed the trial court's order on a bond remission and required the trial court to determine the actual costs incurred, if any, as a direct result of the nonappearance of the defendant.[5] Thus, case law directly on point requires the County to establish the actual costs incurred in each case.
Moreover, as correctly noted by Easy, decisions concerning the assessment of the costs of prosecution and appointed counsel fees require the state or county to prove the actual costs incurred. See, e.g., Bennett v. State, 686 So.2d 810 (Fla. 4th DCA 1997); Ruffin v. State, 652 So.2d 1287 (Fla. 4th DCA 1995); Smith v. State, 401 So.2d 1176 (Fla. 1st DCA 1981). Further, section 938.27(1), Florida Statutes (1999), dealing with a judgment for costs of prosecution against a criminal defendant, requires the agency seeking costs to document its actual costs. Therefore, the weight of authority on similar cost issues in other contexts requires proof of the actual costs incurred before they may be assessed.
The County does not point to any authority contrary to that presented by Easy. Rather, the County simply argues that it would be impractical to require it to prove actual costs in every case and that hearings on each cost determination would overwhelm the courts. This argument is overstated for two reasons. First, in order to prove actual costs, the County need only documentlikely in the form of an affidavitthe time spent and expenses incurred by the sheriff's office in returning the defendant from the county of arrest to the county holding the arrest warrant. This is no more than what is already required by section 938.27(1), Florida Statutes (1999), for collecting costs of prosecution. Second, the County need only have a hearing if it cannot agree with the bail bondsman on the amount of costs incurred.
The weight of authority shows that the County must establish the actual costs incurred in returning each individual defendant to the county of jurisdiction. Once it has done so, these costs are properly assessed against the bail bondsman. Because in this case the County presented evidence of only average costs, the cost award cannot be sustained.
In conclusion, we hold that the only costs that may be awarded against a bail bondsman when setting aside a bond forfeiture are those incurred by the sheriff's office in actually returning the defendant from the county of arrest to the county of jurisdiction. The County has the burden of proving the actual costs incurred if the bail bondsman cannot agree with the county attorney on the amount of the costs incurred. On remand, Easy and the county attorney's office should attempt to agree on the amount of the actual costs incurred by the sheriff's office in returning each defendant from the county of arrest *1179 to the county holding the arrest warrant. If they cannot agree in each case, the trial court must have a hearing in the cases in which there is disagreement to determine the actual costs incurred by the sheriff's office in returning the defendant from the county of arrest to Polk County.
Reversed and remanded.
SALCINES, J., and SCHEB, JOHN M., (Senior) Judge, concur.
NOTES
[1] This case comes to us as a consolidated case from both Polk County Court and the Tenth Circuit Court. The trial court consolidated sixty-two cases in which Easy was the bail bondsman. The cases arising in circuit court were appealed directly to this court. On the cases arising in county court, the trial court certified the issue presented as being one of great public importance. This court accepted review of the cases arising in county court under Florida Rule of Appellate Procedure 9.030(b)(4)(A).
[2] Section 903.26(8), Florida Statutes (1999), states:

If the defendant is arrested and returned to the county of jurisdiction of the court prior to judgment, the clerk, upon affirmation by the sheriff or the chief correctional officer, shall, without further order of the court, discharge the forfeiture of the bond. However, if the surety agent fails to pay the costs and expenses incurred in returning the defendant to the county of jurisdiction, the clerk shall not discharge the forfeiture of the bond. If the surety agent and the county attorney fail to agree on the amount of said costs, then the court, after notice to the county attorney, shall determine the amount of the costs.
[3] We note that there was evidence at the hearing on Easy's motion that there is no uniformity in the State as to the amounts charged as "costs" to set aside a bond forfeiture; however, it appears that most counties are charging some type of flat fee.
[4] While we cannot envision all the expenses that a sheriff's office may incur in returning a defendant from the county of arrest to the county holding the arrest warrant, we note that these costs would include vehicle expenses, meals, and, when necessary, overnight lodging for the transporting deputy and prisoner. It may well be that the County can also claim as costs the prorated salary paid to any deputy who must cover the assignment of the deputy who had to leave the county to pick up the defendant. We leave unanswered the question of whether the County can claim as costs the prorated salary of the law enforcement officer who appears at a hearing to justify the amount of costs sought by the County.
[5] The language of the 1979 version of section 903.28(2), Florida Statutes, at issue in Accredited Surety & Casualty Co. v. State, 418 So.2d 378 (Fla. 5th DCA 1982), simply stated that "remission shall be granted on the condition of payment of costs unless the ground for remission is that there was no breach of the bond." § 903.28(2), Fla. Stat. (1979). Thus, the Accredited opinion references costs expended as a direct result of the nonappearance of the defendant rather than the costs of returning the defendant to the jurisdiction of the court. The more specific language at issue before this court was added in 1986. See Ch. 86-151, § 6, Laws of Fla. The addition of this more specific language supports our conclusion that the only costs contemplated by the statute are those actually incurred in transporting the defendant from the county of arrest to the county holding the arrest warrant.